Nos. 2022-1465, 2022-1466, 2022-1467, 2022-1549, 2022-1550, 2022-1551, 2022-1552

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

————————————————

ARBOR GLOBAL STRATEGIES, LLC,
Appellant,

v.

SAMSUNG ELECTRONICS CO., LTD.; TAIWAN SEMICONDUCTOR
MANUFACTURING COMPANY, LTD.,
Appellees,

KATHERINE K. VIDAL, Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office,
Intervenor.

————————————————

ARBOR GLOBAL STRATEGIES, LLC,
Appellant,

v.

XILINX, INC.; TAIWAN SEMICONDUCTOR MANUFACTURING
COMPANY, LTD.,
Appellees,

KATHERINE K. VIDAL, Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office,
Intervenor.

————————————————

On Appeal from the Patent Trial and Appeal Board in case nos. IPR2020-01020,
IPR2020-01021, IPR2020-01022, IPR2020-01567, IPR2020-01568, IPR2020-
01570, IPR2020-01571.

————————————————

BRIEF FOR INTERVENOR

————————————————

*Of Counsel:*

THOMAS W. KRAUSE
  *Solicitor*

FARHEENA Y. RASHEED
  *Deputy Solicitor*

MICHAEL S. FORMAN
MICHAEL TYLER
  *Associate Solicitors*
  *U.S. Patent and Trademark Office*
  *Mail Stop 8, P.O. Box 1450*
  *Alexandria, Virginia 22313-1450*

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney*
  *General*

MELISSA N. PATTERSON
DANA KAERSVANG
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7216*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 307-1294*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

STATEMENT OF JURISDICTION.................................................... 1

STATEMENT OF THE ISSUE............................................................ 2

STATEMENT OF THE CASE.............................................................. 2

    A.    Statutory Background........................................................2

        1.    Structure Of The USPTO.........................................2

        2.    Inter Partes Review ...................................................3

    B.    Factual Background And Procedural History .......................6

SUMMARY OF ARGUMENT .............................................................. 7

ARGUMENT ........................................................................................ 8

I.    Standard of Review............................................................... 8

II.    *Ethicon* forecloses Arbor Global's constitutional and statutory
challenges. ........................................................................... 8

    A.    *Ethicon* held that there were no due process concerns with the
same panel making the institution decision and the final
decision...........................................................................10

    B.    *Ethicon* resolved the issues that Arbor Global seeks to raise
here. ...............................................................................14

        1.    Arbor Global's constitutional challenge is correctly
foreclosed. ...............................................................14

        2.    Arbor Global's APA challenge is correctly foreclosed. ...........16

CONCLUSION ................................................................................... 22

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                     **Page(s)**

*Butz v. Economou,*
438 U.S. 478 (1978) ............................................................................... 17

*Chambers v. NASCO, Inc.,*
501 U.S. 32 (1991) ................................................................................ 19

*Cuozzo Speed Techs., LLC v. Lee,*
579 U.S. 261 (2016) .................................................................. 5, 20, 21

*Demko v. United States,*
216 F.3d 1049 (Fed. Cir. 2000) ............................................................ 8

*Dussia v. Barger,*
466 Pa. 152 (Pa. 1975) ........................................................................ 17

*Ethicon Endo-Surgery, Inc. v. Covidien LP,*
812 F.3d 1023 (Fed. Cir. 2016) ..................... 1, 4, 7, 9, 10, 11, 12, 13, 15, 17, 18

*Heat & Control, Inc. v. Hester Indus., Inc.,*
785 F.2d 1017 (Fed. Cir. 1986) .......................................................... 19

*Laboratory Corp. of Am. Holdings v. Chiron Corp.,*
384 F.3d 1326 (Fed. Cir. 2004) .......................................................... 19

*Liteky v. United States,*
510 U.S. 540 (1994) ........................................................................ 11, 15

*Mobility Workx, LLC v. Unified Patents, LLC,*
15 F.4th 1146 (Fed. Cir. 2021) ................................................... 8, 16, 21

*Murchison, In re,*
349 U.S. 133 (1955) ........................................................................ 15, 18

*NLRB v. United Food & Commercial Workers Union, Local 23,*
484 U.S. 112 (1987) .............................................................................. 17

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC,*
138 S. Ct. 1365 (2018) ......................................................................... 21

*Saint Regis Mohawk Tribe v. Mylan Pharms. Inc.,*
896 F.3d 1322 (Fed. Cir. 2018) .................................................... 20, 21

ii

*SAS Inst., Inc. v. Iancu*,
 138 S. Ct. 1348 (2018) ............................................................... 4, 5, 6, 14, 20-21

*St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*,
 749 F.3d 1373 (Fed. Cir. 2014) ........................................................ 4, 5

*3M Co. (Minn. Mining & Mfg.) v. Browner*,
 17 F.3d 1453 (D.C. Cir. 1994) .......................................................... 17

*Tumey v. Ohio*,
 273 U.S. 510 (1927) ..................................................................... 15, 16

*United States v. Arthrex, Inc.*,
 141 S. Ct. 1970 (2021) ...................................................................... 6

*United States v. L.A. Tucker Truck Lines, Inc.*,
 344 U.S. 33 (1952) ............................................................................. 9

*Verdegaal Bros. v. Union Oil Co. of Cal.*,
 750 F.2d 947 (Fed. Cir. 1984) ......................................................... 19

*Withrow v. Larkin*,
 421 U.S. 35 (1975) ................................................ 10, 11, 12, 13, 18

*Woodford v. Ngo*,
 548 U.S. 81 (2006) ............................................................................. 9

**Statutes:**

Administrative Procedure Act (APA):
 5 U.S.C. § 554(a) ............................................................................. 16
 5 U.S.C. § 554(d) ............................................................................. 16

15 U.S.C. § 1067 .................................................................................. 3

28 U.S.C. § 1295(a)(4)(A) .................................................................. 2

35 U.S.C. § 1(a) .................................................................................. 2

35 U.S.C. § 3(a) .................................................................................. 2

35 U.S.C. § 3(b)(1) .............................................................................. 3

35 U.S.C. § 3(b)(2) ................................................................. 3

35 U.S.C. § 3(b)(3) ................................................................. 3

35 U.S.C. § 6(a) ..................................................................... 3

35 U.S.C. § 131 ...................................................................... 2

35 U.S.C. § 132(a) .................................................................. 2

35 U.S.C. § 141(c) .................................................................. 6

35 U.S.C. § 142 .................................................................. 1, 2

35 U.S.C. § 251(a) .................................................................. 3

35 U.S.C. § 303(a) .................................................................. 3

35 U.S.C. § 311 *et seq.* ........................................................ 3

    35 U.S.C. § 311(a) ............................................................ 4
    35 U.S.C. § 311(b) ............................................................ 4
    35 U.S.C. § 312(a)(3) ........................................................ 4
    35 U.S.C. § 313 ................................................................ 4
    35 U.S.C. § 314 .............................................................. 18
    35 U.S.C. § 314(a) ............................................. 4, 5, 14, 20
    35 U.S.C. § 314(b) ............................................................ 5
    35 U.S.C. § 314(d) ............................................................ 5
    35 U.S.C. § 316 ................................................................ 5
    35 U.S.C. § 316(a)(4) ........................................................ 3
    35 U.S.C. § 316(a)(5) ........................................................ 6
    35 U.S.C. § 316(a)(6) ........................................................ 6
    35 U.S.C. § 316(a)(8) ........................................................ 6
    35 U.S.C. § 316(a)(10) ...................................................... 6
    35 U.S.C. § 316(a)(13) ...................................................... 6
    35 U.S.C. § 316(b) ............................................................ 4
    35 U.S.C. § 316(e) ........................................................ 4, 14
    35 U.S.C. § 318(a) ............................................................ 6
    35 U.S.C. § 319 ............................................................ 2, 6

**Regulations:**

37 C.F.R. pt. 42 ................................................................ 4
   37 C.F.R. § 42.1(d) ................................................. 18
   37 C.F.R. § 42.4(a) ................................................... 5
   37 C.F.R. § 42.71(c) .................................................. 5
   37 C.F.R. § 42.108 .................................................... 5
   37 C.F.R. § 42.108(c) ................................................ 14

37 C.F.R. § 90.3(a) ..................................................... 1, 2

**Other Authorities:**

2 K. Davis, *Administrative Law Treatise* § 13.11 (1958) ...................................... 18

PTAB, *Consolidated Trial Practice Guide* (Nov. 2019),
   https://perma.cc/7CSR-8MLK ............................................... 4, 14

U.S. Dep't of Justice, *Letter of Submittal* (Jan. 22, 1941),
   https://perma.cc/VEN8-PU75 .................................................18

USPTO, *Interim Process for Director Review*, https://perma.cc/38JD-LUDV:
   § 7 .........................................................................9
   § 22 .......................................................................5

USPTO, U.S. Dep't of Commerce, *Manual of Patent Examining
   Procedure* § 1002.02 (9th ed. Feb. 2023),
   https://perma.cc/7N2K-NUAF ............................................... 3

## STATEMENT OF RELATED CASES

No other appeal in or from the present civil action has previously been before this or any other appellate court. The government is not aware of any related cases within the meaning of Federal Circuit Rule 47.5(b).

## INTRODUCTION

Appellees sought inter partes review of certain of Arbor Global's patent claims. The Patent Trial and Appeal Board (PTAB or Board) found the claims to be unpatentable. Arbor Global argues that the Board proceedings were conducted in violation of the Due Process Clause and the Administrative Procedure Act (APA) because the case was assigned to the same Board panel at both the institution and trial phases.

Arbor Global's arguments are foreclosed by *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 812 F.3d 1023 (Fed. Cir. 2016). As the Court held in *Ethicon*, "neither the statute nor the Constitution precludes the same panel of the Board that made the decision to institute inter partes review from making the final determination." *Id.* at 1026. Rather, the Board's procedure "is directly analogous to a district court determining whether there is 'a likelihood of success on the merits' and then later deciding the merits of a case." *Id.* at 1030.

## STATEMENT OF JURISDICTION

The Board issued its final written decisions as to Samsung's petitions on November 24, 2021. Appx1; Appx61; Appx132. Appellant requested Director Review, which the Director denied on February 4, 2022. Appx181. Appellant filed timely notices of appeal on February 10, 2022. *See* 35 U.S.C. § 142; 37 C.F.R. § 90.3(a).

The Board issued its final written decisions as to Xilinx's petitions on March 2, 2022.  Appx184; Appx281; Appx394; Appx520.  Appellant filed timely notices of appeal on March 18, 2022.  *See* 35 U.S.C. § 142; 37 C.F.R. § 90.3(a).

This Court has jurisdiction over all of the appeals under 35 U.S.C. § 319 and 28 U.S.C. § 1295(a)(4)(A).

## STATEMENT OF THE ISSUE

Whether assigning the same Board panel to both the institution phase and the merits phase of an inter partes review proceeding is consistent with the Due Process Clause and the APA.

## STATEMENT OF THE CASE

**A.    Statutory Background**

**1.    Structure Of The USPTO**

Congress established the United States Patent and Trademark Office (USPTO) within the Department of Commerce.  *See* 35 U.S.C. § 1(a).  Congress vested the "powers and duties" of the Office in a single "Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office" (the Director).  *Id.* § 3(a).  Accordingly, throughout the Patent Act, Congress often speaks of the agency's functions as though they were performed personally by the Director.  *See, e.g.*, *id.* § 131 ("the Director shall issue a patent"); *id.* § 132(a) ("the Director shall notify the applicant" of the rejection of

2

a patent application); *id.* § 251(a) ("the Director shall" reissue amended patents); *id.* § 303(a) ("the Director will determine whether a substantial new question of patentability" is raised by a request for reexamination).

To assist the Director in the discharge of her duties, Congress also created a Deputy Under Secretary and Deputy Director, 35 U.S.C. § 3(b)(1); separate Commissioners for Patents and Trademarks, *id.* § 3(b)(2); and two expert tribunals of administrative judges: the Patent Trial and Appeal Board and the Trademark Trial and Appeal Board, *id.* § 6(a); 15 U.S.C. § 1067.  The Director routinely delegates authority to these offices, as well as to other positions she creates.  *See, e.g.*, USPTO, U.S. Dep't of Commerce, *Manual of Patent Examining Procedure* § 1002.02 (9th ed. Feb. 2023)[1]; 35 U.S.C. § 3(b)(3).

## 2.    Inter Partes Review

Congress has long provided administrative mechanisms for third parties to ask the USPTO to reconsider the patentability of claims in an issued patent.  Inter partes review is one such mechanism.  *See* 35 U.S.C. § 311 *et seq.*

The Director has authority to "prescribe regulations[] . . . establishing and governing inter partes review."  35 U.S.C. § 316(a)(4).  In doing so, the Director should consider the effect of any regulations on "the efficient administration of the

---

[1] https://perma.cc/7N2K-NUAF.

Office, and the ability of the Office to timely complete proceedings instituted under this chapter," among other things. *Id.* § 316(b). Pursuant to these express statutory grants of rulemaking authority, the USPTO has prescribed regulations governing inter partes review and other types of post-grant review, as well as general rules of practice before the Board. *See Ethicon*, 812 F.3d at 1033 (discussing the agency's "broad rulemaking power" under the America Invents Act (AIA)). *See generally* 37 C.F.R. pt. 42.

An inter partes review proceeds in two distinct phases. *St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, 749 F.3d 1373, 1375-76 (Fed. Cir. 2014). In the first phase, "a party must file 'a petition to institute an inter partes review of [a] patent,'" in which the party "request[s] to cancel as unpatentable 1 or more claims of [the] patent" on certain grounds. *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1353 (2018) (first and third alterations in original) (quoting 35 U.S.C. § 311(a), (b)). The petitioner "must identify 'each claim challenged,' the grounds for the challenge, and the evidence supporting the challenge." *Id.* (quoting 35 U.S.C. § 312(a)(3)). The patent owner has the opportunity to respond and explain "why no inter partes review should be instituted." 35 U.S.C. § 313. The petitioner bears the burden of proof on the statutory factors. *Id.* §§ 314(a), 316(e); PTAB, *Consolidated Trial Practice Guide* 42 (Nov. 2019), https://perma.cc/7CSR-8MLK.

As an exercise of her rulemaking authority, the Director expressly delegated her power to institute inter partes review to the Board. *See* 37 C.F.R. §§ 42.4(a) ("The Board institutes the trial on behalf of the Director."), 42.108 ("Institution of inter partes review"); *St. Jude Med., Cardiology Div., Inc.*, 749 F.3d at 1375 n.1. The Board thus decides "whether to institute an inter partes review . . . pursuant to [the] petition." 35 U.S.C. § 314(b). The Board can do so only if it determines "based on the parties' papers, 'that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition.'" *SAS*, 138 S. Ct. at 1353 (quoting 35 U.S.C. § 314(a)). If the Board concludes that the statutory factors are met, it nevertheless has discretion to deny institution. 35 U.S.C. § 314(a). A party dissatisfied with the institution decision may file a petition for rehearing with the Board, *see* 37 C.F.R. § 42.71(c), and the Director can also review such decisions *sua sponte*, USPTO, *Interim Process for Director Review* § 22,[2] but the institution decision is not subject to judicial review, 35 U.S.C. § 314(d); *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 275-76 (2016).

If the Board decides to institute proceedings, the inter partes review continues to the second phase. At that phase, the Board conducts review on the merits. 35 U.S.C. § 316. "Once the Director institutes an inter partes review, the

---

[2] https://perma.cc/38JD-LUDV.

matter proceeds before the Board with many of the usual trappings of litigation,"
including discovery, briefing, presentation of evidence, and an oral hearing. *SAS*,
138 S. Ct. at 1353-54; 35 U.S.C. § 316(a)(5), (6), (8), (10), (13). "[A]t the end of
the litigation the Board 'shall issue a final written decision with respect to the
patentability of any patent claim challenged by the petitioner.'" *SAS*, 138 S. Ct. at
1354 (quoting 35 U.S.C. § 318(a)). The Board's final written decision with respect
to patentability is subject to review by the Director, *United States v. Arthrex, Inc.*,
141 S. Ct. 1970, 1987-88 (2021), and appeal to this Court. 35 U.S.C. §§ 319,
141(c).

## B.    Factual Background And Procedural History

Appellant Arbor Global owns U.S. Patent Numbers 6,781,226 ('226 patent);
7,282,951 ('951 patent); RE42,035 ('035 patent); and 7,126,214 ('214 patent), all
of which relate to a reconfigurable processor module comprising hybrid stacked
integrated circuit die elements. Appx680; Appx691; Appx702; Appx714.

Appellee Samsung filed petitions for inter partes reviews of the '226, '951,
and '035 patents. Appx2; Appx61; Appx132. Appellee Xilinx also filed petitions
for inter partes review of these patents, as well as for inter partes review of the
'214 patent. Appx185; Appx282; Appx395; Appx521. Taiwan Semiconductor
Manufacturing joined all of the proceedings. Appx1; Appx61; Appx132;
Appx184; Appx281; Appx394; Appx520.

6

At the Board, all of the petitions were assigned to the same three-judge panel. The Board instituted proceedings on all of the petitions. Appx903; Appx1035; Appx3959; Appx4084; Appx6667; Appx6809; Appx9216; Appx9339; Appx13194; Appx13342; Appx17479; Appx17632; Appx21951; Appx22117. The Board conducted trials and eventually issued final written decisions finding all of the challenged claims unpatentable. Appx1; Appx61; Appx132; Appx184; Appx281; Appx394; Appx520.

Arbor Global sought Director Review of the decisions on the three Samsung petitions. In its Request for Director Review, Arbor Global argued for the first time that the Board's practice of assigning the same panel to the institution and trial stages was unconstitutional and inconsistent with statute. Appx1259-1266. The Director denied the request for review. Appx182.

Arbor Global appealed. The government intervened to address the challenge to the Board's assignment practice.

## SUMMARY OF ARGUMENT

As this Court held in *Ethicon Endo-Surgery, Inc. v. Covidien LP*, "neither the statute nor the Constitution precludes the same panel of the Board that made the decision to institute inter partes review from making the final determination." 812 F.3d 1023, 1026 (Fed. Cir. 2016). *Ethicon* considered and rejected the very arguments that Arbor Global makes here, including the argument that the Board is

biased from seeing a partial presentation of the evidence at the institution phase
and the argument that the institution decision is not an adjudicatory decision.
Under *Ethicon* and the well-established precedent it applied, it is clear that
assigning the same Board panel to the institution and trial stages is consistent with
both due process principles and the APA.

Arbor Global asserts that *Ethicon* is no longer good law, but this is incorrect.
This Court applied *Ethicon* recently to reject a similar challenge in *Mobility Workx,
LLC v. Unified Patents, LLC*, 15 F.4th 1146, 1157 (Fed. Cir. 2021). Arbor Global
misunderstands the issues in attempting to relitigate the assertion that the
institution decision is prosecutorial because it is discretionary. Adjudicators
regularly exercise discretion. None of the cases cited by Arbor Global casts any
doubt on *Ethicon*.

## ARGUMENT

### I.    Standard of Review

This Court reviews constitutional challenges to acts of Congress and
statutory interpretation questions de novo. *See Demko v. United States*, 216 F.3d
1049, 1052 (Fed. Cir. 2000).

### II.   *Ethicon* forecloses Arbor Global's constitutional and statutory challenges.

This Court has already correctly held "that neither the statute nor the
Constitution precludes the same panel of the Board that made the decision to

8

institute inter partes review from making the final determination." *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 812 F.3d 1023, 1026 (Fed. Cir. 2016).  That decision controls this case, as Arbor Global appears to recognize by asking this Court to overrule that decision.  *See* Br. 55.  But no basis exists to question the correctness or continuing validity of *Ethicon*.

This Court could also decline to review Arbor Global's constitutional challenge because Arbor Global failed to raise the argument before the Board at the appropriate time.  "[A]s a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred, *but has erred against objection made at the time appropriate under its practice*." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (alterations in original) (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952)).  Arbor Global did not raise the argument at either the institution or the trial phase.  It did raise it in its request for Director Review of the Samsung petitions, but Director's review is not an opportunity to introduce previously forfeited issues.  Appx1256-1266; *Interim Process for Director Review*, *supra*, § 7 (providing that "[t]he Director will not consider new evidence or arguments not part of the official record").

**A.**    ***Ethicon* held that there were no due process concerns with the same panel making the institution decision and the final decision.**

**1.** In *Ethicon*, this Court upheld the USPTO's process of assigning the same Board panel to both the institution and trial phase. *Ethicon* concluded that the Board's conduct in both phases does not impermissibly combine investigatory and adjudicatory functions and that, in any event, there would be no constitutional problem with doing so. *Ethicon* also concluded that the AIA, which created inter partes review and the Board, does not require separate decisionmakers at the institution and trial phases.

The Court first concluded that it was well-established that "combining the investigative and adjudicatory functions in a single body does not raise constitutional concerns." *Ethicon*, 812 F.3d at 1029 (discussing *Withrow v. Larkin*, 421 U.S. 35, 58 (1975)). The Court then went on to reject the premise that Board panels were engaged in investigatory or prosecutorial functions. It concluded that "[b]oth the decision to institute and the final decision are adjudicatory decisions." *Id.* at 1030. They therefore "do not involve combining investigative and/or prosecutorial functions with an adjudicatory function." *Id.* Rather having the same Board panel decide both the institution stage and the trial stage is "directly analogous" to a district court deciding a motion for a preliminary injunction or a temporary restraining order and then subsequently deciding the merits of a case.

*Id.* The Court noted that "the APA imposes no separation obligation as to those involved in preliminary and final decisions." *Id.* at 1030 n.3.

This Court specifically rejected the argument that "because the panel of the Board is first exposed to a limited record consisting of the petition and patent holder's preliminary response, there is a risk that the panel may prejudge the case before seeing a full record, thereby depriving a patent holder of a due process right to an impartial decision maker." *Ethicon*, 812 F.3d at 1029. The Court reasoned that "'opinions held by judges as a result of what they learned in earlier proceedings' are 'not subject to deprecatory characterization as "bias" or "prejudice."'" *Id.* at 1030 (quoting *Liteky v. United States*, 510 U.S. 540, 551 (1994)). Indeed, "even 'exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of [adjudicators] at a later adversary hearing.'" *Id.* (alteration in original) (quoting *Withrow*, 421 U.S. at 55). Rather, "[t]o rise to the level of presenting actual bias, the challenger must show that an adjudicator is exposed to unofficial, 'extrajudicial' sources of information." *Id.* (quoting *Liteky*, 510 U.S. at 554). Any other rule would, in the Court's view, run contrary to the "presumption of honesty and integrity" afforded adjudicators. *Id.* (quoting *Withrow*, 421 U.S. at 47).

Finally, *Ethicon* concluded that "[t]here is nothing in the statute or legislative history of the statute indicating a concern with separating the functions

11

of initiation and final decision." *Ethicon*, 812 F.3d at 1031.  The Court reasoned that there is a "longstanding rule that agency heads have implied authority to delegate to officials within the agency," and "Congress obviously assumed that the Director would delegate." *Id.* at 1031-32.  It concluded that "[t]here is nothing in the Constitution or the statute that precludes the same Board panel from making the decision to institute and then rendering the final decision." *Id.* at 1033.

**2.** *Ethicon* was plainly correct.  In *Withrow v. Larkin*, the Supreme Court rejected a due process challenge to a state medical board that "both investigated, and then later adjudicated" the suspension of a physician's license. *Ethicon*, 812 F.3d at 1029.  The Supreme Court reasoned that "[i]t is . . . very typical for the members of administrative agencies to receive the results of investigations, to approve the filing of charges or formal complaints instituting enforcement proceedings, and then to participate in the ensuing hearings.  This mode of procedure . . . does not violate due process of law." *Withrow*, 421 U.S. at 56.

Indeed, as the Supreme Court reasoned in *Withrow*, courts employ similar procedures.  For example, "[j]udges repeatedly issue arrest warrants on the basis that there is probable cause to believe that a crime has been committed and that the person named in the warrant has committed it," and they "preside at preliminary hearings where they must decide whether the evidence is sufficient to hold a defendant for trial." *Withrow*, 421 U.S. at 56.  But "[n]either of these pretrial

involvements has been thought to raise any constitutional barrier against the judge's presiding over the criminal trial" or, in a bench trial, "against making the necessary determination of guilt or innocence." *Id.* In addition, a judge is not disqualified from holding a trial "because he has initially assessed the facts in issuing or denying a temporary restraining order or a preliminary injunction." *Id.*

In all of these situations, the Supreme Court emphasized that "there is no logical inconsistency" between a preliminary determination under one legal standard and a final decision under a higher legal standard after an adversarial hearing. *Withrow*, 421 U.S. at 57. For example, "there is no logical inconsistency between a finding of probable cause and an acquittal in a criminal proceeding" or between an "agency filing a complaint based on probable cause and a subsequent decision, when all the evidence is in, that there has been no violation of the statute." *Id.* Thus, as this Court correctly concluded in *Ethicon*, *Withrow* forecloses a constitutional claim premised on the argument that an agency employee both instituted and adjudicated a proceeding.

*Ethicon* was also correct in determining that the Board's procedure raises even less concern than the procedure in *Withrow* because the Board's institution decision is an adjudicatory decision. *Ethicon*, 812 F.3d at 1030. In deciding whether to institute inter partes review, the Board reviews opposing views presented by different parties and decides whether the standard for instituting

13

proceedings is met based on those views.  Inter partes review is "guided by a petition," and "it's the petitioner, not the Director, who gets to define the contours of the proceeding." *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1355 (2018).  The Board can institute proceedings only if it "decides that the information presented in the petition demonstrates that there is a reasonable likelihood that at least one of the claims challenged in the petition is unpatentable," taking "into account a patent owner preliminary response where such a response is filed, including any testimonial evidence." 37 C.F.R. § 42.108(c).  The petitioner bears the burden of proof on the statutory factors at institution, just as at the later stage.  35 U.S.C. §§ 314(a), 316(e); *Consolidated Trial Practice Guide*, *supra*, at 42.

Thus, at the institution phase, no less than at the trial phase, inter partes review is a "party-directed, adversarial process." *SAS*, 138 S. Ct. at 1355.

### B. *Ethicon* resolved the issues that Arbor Global seeks to raise here.

#### 1. Arbor Global's constitutional challenge is correctly foreclosed.

Arbor Global asserts (Br. 67-69) that assigning the institution and final decisions to the same Board panel violates the Due Process clause.  This is the very challenge that this Court squarely rejected in *Ethicon*.  As discussed above, *Ethicon* recognized that the institution phase of inter partes review is not an investigative or prosecutorial function, concluded that even if it were no

14

constitutional concerns would be implicated, and that participation by a decisionmaker at earlier and later stages of a proceeding does not create any "bias." *See supra*, p. 10-11.

Arbor Global asserts (Br. 67-69) that assigning the institution and final decisions to the same Board panel violates the Due Process clause of the Constitution because it "invit[es] biased decision-making by [Administrative Patent Law Judges] who are inclined to confirm their decision to institute [inter partes review] by finding patents unpatentable during the [inter partes review] adjudication."   But this Court already rejected this argument in *Ethicon*.  As *Ethicon* explained, it is not "bias" for judges to form "opinions" "as a result of what they learned in earlier proceedings."  *Ethicon*, 812 F.3d at 1030 (quoting *Liteky*, 510 U.S. at 551).  To show bias, Arbor Global would need to show that the Board members were "exposed to unofficial, 'extrajudicial' sources of information," such as when a judge calls on "his own personal knowledge" of what happened.  *Id.* at 1030-31 (quoting *In re Murchison*, 349 U.S. 133, 138 (1955)).  As in *Ethicon*, "[t]here is no allegation of exposure to extra-judicial information here."  *Id.* at 1031.

Arbor Global does not advance its case by citing *Tumey v. Ohio*, 273 U.S. 510 (1927).  Br. 67.  The procedure which the Court in that case viewed as offering an impermissible "possible temptation to the average man as a judge" was one in

15

which the judge received a portion of every fine he imposed, thereby giving the

judge a "direct, personal, substantial pecuniary interest" in the outcome of the

proceeding. *Tumey*, 273 U.S. at 520, 523, 532. Arbor Global does not allege any

such interest here, and this Court has already concluded that none exists. *Mobility

Workx, LLC v. Unified Patents, LLC*, 15 F.4th 1146, 1156 (2021) (holding that

Administrative Patent Judges do not have the type of interest in the outcome of

institution decisions that would raise constitutional concerns under *Tumey*).

### 2. Arbor Global's APA challenge is correctly foreclosed.

Arbor Global suggests that its APA challenge is open to relitigation based on

its assertion that institution of inter partes review is a prosecutorial function. In

making this argument, Arbor Global points (Br. 52) to § 554(d)(2) of the APA

which generally bars employees with "investigative or prosecuting functions" from

making an adjudicative decision. 5 U.S.C. § 554(d); *id.* § 554(a), (d) (providing,

with certain exceptions, in an "adjudication required by statute to be determined on

the record after opportunity for an agency hearing," "[a]n employee or agent

engaged in the performance of investigative or prosecuting functions for an agency

in a case may not, in that or a factually related case, participate or advise in the

decision[] . . . except as witness or counsel in public proceedings").

This contention too, however, has already been rejected by this Court. As

this Court explained in *Ethicon*, the Board's institution decision is a preliminary

"adjudicatory decision[]" analogous to ruling on a motion for a temporary
restraining order or a preliminary injunction. *Ethicon*, 812 F.3d at 1030. Both the
institution and the trial phases are "adjudicatory decisions and do not involve
combining investigative and/or prosecutorial functions with an adjudicatory
function." *Id.* "[T]he APA imposes no separation obligation as to those involved
in preliminary and final decisions." *Id.* at 1030 n.3. The APA therefore presents
no barrier to the same panel deciding a case at the institution and trial phase.

Notwithstanding *Ethicon*'s clarity on this point, Arbor Global insists (Br. 58-
59, 64-66) that this Court erred because institution decisions are, by their nature,
prosecutorial. This is not so.

An institution decision may be prosecutorial when it is the culmination of an
investigative process. *See, e.g.*, *NLRB v. United Food & Commercial Workers
Union, Local 23*, 484 U.S. 112, 118 (1987); *3M Co. (Minn. Mining & Mfg.) v.
Browner*, 17 F.3d 1453, 1456 (D.C. Cir. 1994) (addressing situation in which
agency officials investigate and bring administrative complaints and reasoning that
the Supreme Court "perceives no substantial distinction between the function
performed by agency attorneys 'presenting evidence in an agency hearing and the
function of a prosecutor who brings evidence before a court'" (quoting *Butz v.
Economou*, 438 U.S. 478, 516 (1978))); *see also Dussia v. Barger*, 466 Pa. 152,
154-55, 158 n.2 (Pa. 1975) (addressing a state police commissioner's decision to

17

institute the court martial of a senior department official prior to the adversarial presentation of evidence).  In such circumstances, the concern is that the adjudicator may rely "on his own personal knowledge and impression of what had occurred . . . the accuracy of which could not be tested by adequate cross-examination."  *Ethicon*, 812 F.3d at 1031 (quoting *Murchison*, 349 U.S. at 138).

The Board's institution decisions, by contrast, are not the culmination of its own investigative process.  Rather, the Board makes its determination based on an adversarial presentation of the issues in which the petitioner bears the burden of proof.  35 U.S.C. § 314; 37 C.F.R. § 42.1(d).  As the influential Attorney General's Committee on Administrative Procedure explained when the APA was under consideration, "no such unfairness results" when the final decision is made by an adjudicator who also made an institution decision if the institution decision requires the decisionmaker to "simply pass on the sufficiency of material developed and presented to them by others."  U.S. Dep't of Justice, *Letter of Submittal* 57 (Jan. 22, 1941), https://perma.cc/VEN8-PU75; *see also Withrow*, 421 U.S. at 56 n.24 (stating that "[t]he Act does not . . . forbid the combination with judging of instituting proceedings" (quoting 2 K. Davis, *Administrative Law Treatise* § 13.11, at 249 (1958))).

Arbor Global's error seems to stem from its incorrect assertion (Br. 65-66) that an exercise of discretion must be considered a prosecutorial function if it is

non-appealable and addressed towards whether a proceeding should continue (rather than to its ultimate resolution). These factors do not transform a neutral decisionmaker's judgment based on adversarial presentation of the issues into a prosecutorial function. The Supreme Court's decision to grant or deny certiorari, for example, is unappealable and addressed to whether to institute proceedings, but it is undeniably an adjudicative function. District courts likewise exercise discretion as part of their adjudicatory function, including on issues that determine whether the case goes forward. *See, e.g.*, *Laboratory Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326, 1327 (Fed. Cir. 2004) (recognizing district court's discretion to enjoin defendant from maintaining co-pending patent litigation in another district court); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 55 (1991) (recognizing district court's discretion to strike an affirmative defense and impose sanctions); *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 n.9 (Fed. Cir. 1986) (scope of discovery is within district court's discretion); *Verdegaal Bros. v. Union Oil Co. of Cal.*, 750 F.2d 947, 951 (Fed. Cir. 1984) (recognizing district court's discretion to determine whether to exercise jurisdiction over pendent non-federal claims).

Moreover, the Board's discretion is to decide *not* to institute proceedings where institution might otherwise be authorized based on the merits. The Board cannot institute proceedings unless petitioner carries its statutorily specified burden

19

of showing "that there is a reasonable likelihood that the petitioner would prevail." 35 U.S.C. § 314(a).  It is no surprise, given this scheme, that there are invalid patent claims in a high percentage of the cases in which the Board institutes proceedings.  *Cf.* Br. 68 (suggesting that a high percentage in this regard indicates bias).  Arbor Global makes no attempt to explain why the Board's ability to decline to institute proceedings when the statutory criteria are met would bias the Board's evaluation of the nondiscretionary merits question in cases that proceed to the trial phase.

Nor have any subsequent decisions called into question *Ethicon*'s conclusion that institution decisions are adjudicative.  Arbor Global does not advance its case by pointing to recent decisions explaining that inter partes review has "'adjudicatory characteristics' similar to court proceedings, but in other respects it 'is less like a judicial proceeding and more like a specialized agency proceeding.'" *Saint Regis Mohawk Tribe v. Mylan Pharms. Inc.*, 896 F.3d 1322, 1326 (Fed. Cir. 2018) (quoting *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 278-79 (2016)); Br. 63.  None of these cases describes the Board's institution decision as prosecutorial.  They simply recognize the Board's discretion to decline to institute without casting doubt on the well-established fact that, in deciding whether the statutory criteria for institution are met, the Board determines the petitioner's likelihood of success in light of an adversarial presentation of the issues.  *SAS*, 138

S. Ct. at 1355-56; Br. 63 (discussing *Saint Regis Mohawk Tribe*, 896 F.3d at 1328 (holding that Indian tribes do not have sovereign immunity in Board proceedings because "[t]he Director's broad authority to not institute" means that a private party cannot "unilaterally hale a sovereign before" the Board)); *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1378 & n.5 (2018) (holding that, although inter partes review "includes some of the features of adversarial litigation," the Board does not unlawfully exercise Article III judicial power because it adjudicates "public rights"); *Cuozzo Speed Techs.*, 579 U.S. at 278-79 (holding that the Board need not "use the claim construction standard that district courts apply" because, although Board proceedings have "adjudicatory characteristics," "in other significant respects" "inter partes review is less like a judicial proceeding and more like a specialized agency proceeding").

In any event, all of these cases predate this Court's 2021 decision in *Mobility Workx*, which applied *Ethicon* to reject the argument that the "Director's delegation of his authority to institute AIA proceedings violates due process and the [APA] because the Director has delegated the initial institution decision to 'the exact same panel of Judges that ultimately hears the case.'" 15 F.4th at 1157. Arbor Global provides no basis to disregard even one of this Court's precedents, let alone two. Just as *Ethicon* controlled in *Mobility Workx*, it controls here.

## CONCLUSION

For the foregoing reasons, this Court should reject Arbor Global's

constitutional and APA challenges.

Respectfully submitted,

BRIAN M. BOYNTON
   *Principal Deputy Assistant Attorney*
    *General*

*Of Counsel:*

MELISSA N. PATTERSON

THOMAS W. KRAUSE
   *Solicitor*

 */s/ Dana Kaersvang*
DANA KAERSVANG
FARHEENA Y. RASHEED
   *Deputy Solicitor*
   *Attorneys, Appellate Staff*

MICHAEL S. FORMAN
MICHAEL TYLER
   *Associate Solicitors*
   *U.S. Patent and Trademark Office*
   *Mail Stop 8, P.O. Box 1450*
   *Alexandria, Virginia 22313-1450*
   *Civil Division, Room 7216*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 307-1294*
   *Dana.L.Kaersvang@usdoj.gov*

MARCH 2023

22

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 4,817 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Times New Roman 14-point font, a proportionally spaced typeface.

*/s/ Dana Kaersvang*
DANA KAERSVANG